O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TRISTEN PILATO AND               )    Case No. CV 12-0438 JGB(OPx)
WILLIAM THOMAS,                  )
                                 )    **ORDER GRANTING DEFENDANTS'**
                Plaintiffs,      )    **MOTION FOR SUMMARY JUDGMENT**
                                 )
        v.                       )    **[Motion filed on December 6,**
                                 )    **2012]**
JOSHUA RHODES, MICHAEL           )
HAMILTON, VANCE STOLTE,          )
AND DOES 1-25,                   )
                                 )
                Defendants.      )
_____)

        The Court has received and considered all Defendants'
papers filed in support of their Motion for Summary
Judgment.  A hearing on this matter took place on
February 11, 2013, and all arguments presented have been
considered by the Court.  For the reasons discussed
below, Defendants' unopposed motion for summary judgment
will be granted and judgment will be entered against
Plaintiffs.

# I. BACKGROUND

## A.   Plaintiffs' Allegations

Plaintiffs Tristen Pilato ("Pilato" )and William Thomas ("Thomas") filed a complaint on January 18, 2012. (Compl., Doc. No. 1.)  The complaint alleges three claims under 42 U.S.C. § 1983 against Defendants Joshua Rhodes ("Rhodes"), Michael Hamilton ("Hamilton"), Vance Stolte ("Stolte"), and Does 1-25.  Rhodes and Hamilton are Deputies with the Riverside County Sheriff's Department and are supervised by Stolte, a Sergeant.  (Compl., ¶¶ 4-5.)  They are sued in their individual and official capacities.  (Compl., ¶ 4.)

The complaint alleges that Defendants investigated Plaintiffs for narcotics trafficking between January 20 and February 3, 2011.  (Compl., ¶ 9.)  Plaintiffs allege that Defendants used a cooperating informant named "Kelly C." to develop probable cause to secure a search warrant for Plaintiffs' residence.  (Id.)  According to the complaint, Rhodes contacted Kelly C. on January 19, 2011 and asked her to go to Plaintiffs' home in response to a Craigslist ad.  (Compl., ¶ 12b.)  Plaintiffs allege Rhodes told Kelly C., "[A]ll I need you to do is tell me you saw drugs," and "I can get a warrant to enter the premises."  (Id.)  On January 20, 2011, Pilato invited Kelly C. to Plaintiffs' home that evening.  (Comp., ¶ 12c.)  Kelly C. met Plaintiffs at their home, and the

1  complaint alleges that at no time did Plaintiffs display,
2  intimate they possessed or had access to any controlled
3  substances.  (Comp., ¶ 12d.)

4      The complaint alleges that Kelly C. reported to
5  Defendants that she had learned no information that would
6  support a finding of probable cause to search Plaintiffs'
7  home.  (Compl., ¶ 13.) Plaintiffs assert that Defendants
8  tried to convince Kelly C. to report she had seen
9  controlled substances, but she declined to falsify
10  evidence.  (Id.)

11      Plaintiffs allege that on February 3, 2011 Rhodes,
12  with the knowledge and consent of Hamilton and Stolte,
13  submitted an affidavit to a Riverside County Superior
14  Court Judge seeking a search warrant for Plaintiffs'
15  home.  (Compl., ¶ 10.)  The affidavit, according to the
16  complaint, stated that Kelly C. "observed controlled
17  substances while in Plaintiffs' home and/or that
18  Plaintiffs had admitted to her that they were engaged in
19  the distribution of narcotics."  (Id.)  The complaint
20  maintains that these assertions were false and Defendants
21  knew them to be false.  (Compl., ¶ 11.)

22      On February 3, 2011, a Riverside County Superior
23  Court Judge issued the search warrant for Plaintiffs'
24  residence authorizing a search for, among other things,
25  methamphetamine and associated paraphernalia and
26  chemicals.  (Compl., ¶ 14.)  At 3:30pm the same day,
27  Defendants and at least five other law enforcement
28

officers executed the warrant.  (Compl., ¶ 15.)
Plaintiffs allege that "none of the evidence the
Defendants were looking for was located."  (Compl., ¶
16.)

Pilato was arrested and booked on charges of
possession and use of a controlled substance, violating
Cal. Health & Safety Code §§ 11377(a), 11350(a), and
11550(a).  (Compl., ¶ 16.)  Thomas was arrested and
booked on charges of being a felon in possession of a
firearm in violation of Cal. Penal Code § 12021(a)(1).
(Id.)  Plaintiffs assert they spent 20 hours in custody.
(Id.)

Plaintiffs allege that as of the date of the
complaint, the Riverside County District Attorney's
Office had not filed charges against them.  (Compl., ¶
17.)

**B.   Procedural Background**

In their complaint filed on January 18, 2012,
Plaintiffs allege the following claims under 42 U.S.C. §
1983: (1) fabrication of false evidence in violation of
the Fifth and Fourteenth Amendments ("First Claim"); (2)
unreasonable search in violation of the Fourth Amendment
("Second Claim"); and (3) unreasonable seizure in
violation of the Fourth Amendment ("Third Claim").
(Compl., ¶¶ 18-38.)  In addition to general and statutory

1  damages, Plaintiffs request exemplary and punitive
2  damages because Defendants acted maliciously and with
3  reckless and callous disregard for Plaintiffs' rights.
4  (Compl., ¶¶ 25, 32, 38.)

5       On February 23, 2012, Defendants answered the
6  complaint and asserted several affirmative defenses.
7  (Doc. No. 6.)  On December 6, 2012, Defendants filed a
8  Motion for Summary Judgment, or in the Alternative,
9  Partial Summary Judgment.  ("MSJ," Doc. No. 43.)  Along
10  with their MSJ, Defendants filed a Statement of
11  Undisputed Material Facts ("SUF," Doc. No. 43-2), a
12  declaration of Michael Hamilton (Doc. No. 43-3), and a
13  declaration of Stephanie J. Tanada, attaching Exhibits A-
14  G.  (Doc. No. 43-4.)  Plaintiffs have not filed any
15  opposition papers with the Court.  Defendants replied on
16  December 25, 2012.  ("Reply," Doc. No. 50.)

17       On December 25, 2012, Defendants filed a Reply to
18  "Plaintiff's Statement of Genuine Dispute of Defendants'
19  Notice of Motion for Summary Judgment, Or Partial Summary
20  Judgment."  ("Second Reply," Doc. No. 51.)  Counsel for
21  Defendants state that on December 22, 2012 they received
22  a copy of an email from Plaintiff Tristen Pilato sent to
23  the courtroom deputy of Magistrate Judge Parada.  (Reply
24  at 1-2.)  The email contained an attachment with a
25  document entitled "Plaintiff's Statement of Genuine
26  Dispute," ("SGD") which Defendants attached to their
27  Second Reply as Exhibit 1.  (Reply at 2.)

28

1    Plaintiffs' SGD was not e-filed or hand filed with
2  the Court in violation of Fed. R. Civ. P. 5(d).  The SGD
3  does not appear on the docket, nor was a paper copy
4  delivered to chambers as required by Local Rule 5-4.5.
5  Plaintiffs did not serve the SGD on Defendants as
6  required by Fed. R. Civ. P. 5(a).  (Reply at 2.)  Under
7  L.R. 5-4.1, all documents must be filed electronically
8  using the Court's CM-ECF system.  "Sending a document by
9  e-mail does not constitute an electronic filing."  L.R.
10 5-4.1.  Since the SGD was not properly filed with the
11 Court, the Court will consider the MSJ unopposed.  <u>See</u>
12 L.R. 7-12 ("The Court may decline to consider any
13 memorandum or other document not filed within the
14 deadline set by order or local rule.").

15    Even if the Court were to consider Plaintiffs'
16 Statement of Genuine Dispute, it would not change the
17 outcome of this motion.  First, Plaintiffs claim many of
18 Defendants' facts are "questionable" or "possibly
19 disputed."  These are not proper terms to dispute the
20 facts in question, and therefore these facts are deemed
21 undisputed.  Second, for those facts where a dispute is
22 properly noted, few citations to evidence are provided
23 and no supporting evidence is attached to the document.
24 <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257
25 (1986) ("[T]he plaintiff must present affirmative
26 evidence in order to defeat a properly supported motion
27 for summary judgment.").  In the few places where
28

Plaintiffs include citations to Defendants' depositions, Plaintiffs fail to append the cited pages to their document, making it impossible for the Court to review the alleged supporting evidence.  Therefore, Plaintiffs' Statement of Genuine Dispute fails to put forth any affirmative evidence sufficient to place any of Defendants' material facts in dispute.

Finally, Plaintiffs are reminded that they are represented by counsel, and therefore should not contact the Court pro se.  L.R. 83-2.9.

## II. LEGAL STANDARD

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998); Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707 F.2d 1030, 1033 (9th Cir. 1983).  The moving party bears the initial burden of identifying the elements of the

1  claim or defense and evidence that it believes
2  demonstrates the absence of an issue of material fact.
3  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
4      When the non-moving party has the burden at trial,
5  however, the moving party need not produce evidence
6  negating or disproving every essential element of the
7  non-moving party's case.  Celotex, 477 U.S. at 325.
8  Instead, the moving party's burden is met by pointing out
9  there is an absence of evidence supporting the non-moving
10 party's case.  Id.
11     The burden then shifts to the non-moving party to
12 show that there is a genuine issue of material fact that
13 must be resolved at trial.  Fed. R. Civ. P. 56(e);
14 Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256.  The
15 non-moving party must make an affirmative showing on all
16 matters placed in issue by the motion as to which it has
17 the burden of proof at trial.  Celotex, 477 U.S. at 322;
18 Anderson, 477 U.S. at 252; see also William W. Schwarzer,
19 A. Wallace Tashima & James M. Wagstaffe, Federal Civil
20 Procedure Before Trial, 14:144.  "This burden is not a
21 light one.  The non-moving party must show more than the
22 mere existence of a scintilla of evidence."  In re Oracle
23 Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir.
24 2010) (citing Anderson, 477 U.S. at 252).  "The
25 non-moving party must do more than show there is some
26 'metaphysical doubt' as to the material facts at issue."
27 In re Oracle, 627 F.3d at 387 (citing Matsushita Elec.
28

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586
(1986)).

A genuine issue of material fact exists "if the
evidence is such that a reasonable jury could return a
verdict for the non-moving party." Anderson, 477 U.S. at
248.  In ruling on a motion for summary judgment, the
Court construes the evidence in the light most favorable
to the non-moving party.  Barlow v. Ground, 943 F.2d
1132, 1135 (9th Cir. 1991); T.W. Elec. Serv. Inc. v. Pac.
Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir.
1987).

### III. FACTS

### A.  Plaintiffs' Failure to Oppose Defendants' MSJ

"Any party who opposes [a motion for summary
judgment] shall serve and file with the opposing papers a
separate document containing a concise 'Statement of
Genuine Disputes' setting forth all material facts as to
which it is contended there exists a genuine dispute
necessary to be litigated."  L.R. 56-1.  Where, as here,
a party fails to file opposing papers or evidence, the
Court "may assume that the material facts as claimed and
adequately supported by the moving party are admitted to
exist without controversy."  L.R. 56-3; see also Fed. R.
Civ. P. 56(e) ("If a party . . . fails to properly

address another party's assertion of fact as required by
Rule 56(c), the court may: . . . (2) consider the fact
undisputed for the purposes of the motion; (3) grant
summary judgment if the motion and supporting materials –
including the facts considered undisputed – show that the
movant is entitled to it. . . .").  Thus, without an
opposition or evidence from Plaintiffs, the Court applies
standards consistent with Federal Rule of Civil Procedure
56 and determines whether Defendants' evidence
demonstrates that there is no genuine issue of material
fact and that Defendants are entitled to judgment as a
matter of law.  See Henry v. Gill Indus., Inc., 983 F.2d
943, 949-50 (9th Cir. 1993).

**B.  Defendants' Facts and Evidence**

Rhodes has been a police officer for twelve years and
has worked for the Riverside County Sheriff's Department
since 2001.  (SUF ¶ 1; Tanada Decl., Exh. C at 10.)  For
about five years, Rhodes has been assigned to the Special
Enforcement Team ("SET"), first in Moreno Valley and then
in Temecula.  (SUF ¶ 2, Exh. C at 15-16.)  The SET is a
proactive investigative unit that focuses on gang and
narcotics enforcement.  (SUF ¶ 2, Exh. C at 16.)

Rhodes has received training on narcotics and search
warrant preparation.  Rhodes completed a forty-hour Peace
Officer Standards and Training course on narcotics,

several classes from the California Narcotics Officer Association, and a drug abuse recognition class with the Riverside County Sheriff's Department. (SUF ¶ 4; Exh. C at 18; Exh. D at 3.) Rhodes also completed a sixteen-hour search warrant preparation and execution class by the Riverside Sheriff's Department. (Exh. D at 230.)

Part of Rhodes' duties on the SET included researching Craigslist to find evidence of crimes involving trading drugs for sex. (SUF ¶ 6; Exh. C at 39.) Rhodes searched for keywords that are code words used for narcotics, such as "party favors," "Tina," "roll," and "party and play." (SUF ¶ 6; Exh. C at 40-41.) Between July 25 and July 31, 2010, Rhodes found an advertisement indicating a male and female were looking for another female to party with in the area of Temecula/Murrieta. (SUF ¶ 7; Exh. D at 232.) Rhodes sent an email to the poster, posing as a female and received a reply from tristenpilato@yahoo.com. (SUF ¶ 8; Exh. C at 56.) Rhodes completed a computer check of the name Tristen Pilato and located an address and a physical description. (SUF ¶ 9.) Rhodes matched the picture and physical description on Pilato's California identification card to her description in the Craigslist ad. (SUF ¶ 10.) Rhodes tried to set up a meeting via email in July 2010, but the poster would not send an address without verifying the responder was a female. (SUF ¶ 11.)

Rhodes continued to see the same or similar advertisements at least two to three times per month between July 31, 2010 and January 15, 2011. (SUF ¶ 12.) Rhodes believed the ads were posted by the same person because the same photos were used. (Id.) Each of the ads mentioned "party favors." (SUF ¶ 14.)

In January 2011, Rhodes saw more ads with the same photos. (SUF ¶ 15.) Rhodes printed out ads posted on December 31, 2010, January 12, 2011, January 15, 2011, and January 20, 2011. (Exh. C at 61-62; Exh. D at 236-240.) Each ad mentions "party favors" or "favors." (Id.) In addition to stating there were "plenty of favors to share," the January 20, 2011 ad described the poster as a "34-year old married bi female" with "long dark brown hair and seductive brown eyes" who was looking for an "all girl encounter." (SUF ¶ 19; Exh. D at 240.) The ad required "girls only" and "voice verification is a must." (Id.)

On January 21, 2011, Rhodes decided to contact the poster of the January 20, 2011 ad. (SUF ¶ 15; Exh. C at 62.) Rhodes sent an email under the alias "Samantha Anderson" asking "So is ur husband still out of town? Have u found anyone?" (SUF ¶ 16; Exh. D at 241.) Later that evening, Rhodes received a response from tristenpilato@yahoo.com with a phone number. (SUF ¶ 20.; Exh. D at 241.)

Due to the poster's request for a female, Rhodes
enlisted the assistance of Community Service Officer Suzi
Lopez ("Lopez") to contact the poster by phone.  (SUF ¶
20; Exh. D at 233.)  Lopez texted the number provided,
and the respondent identified herself as Tristen.  (Exh.
E at 84.)  It appears that these texts occurred prior to
the email exchange in which tristenpilato@yahoo.com
provided her phone number.  However, it is undisputed
that the phone number Lopez texted was associated with
Plaintiff Tristen Pilato.  (SUF ¶ 23.)  Lopez exchanged
several text messages with that number on January 21,
2011 relating to drug use.  (SUF ¶ 23; Exh. E.)  One text
stated, "[W]e have pure mdma...which is pure xtc...plus
regular tabs." and another asked "[H]ow do you like ur
tina? Smoke...or snort?"  (Exh. E at 92.)  Lopez also
received a text inviting her to an address which a
computer check revealed to be Tristen Pilato's residence.
(SUF ¶ 22; Exh. D at 233.)

Between January 28, 2011 and February 3, 2011, Rhodes
continued to see postings using the same modus operandi
as those above.  (SUF ¶ 25.)  On February 3, 2011, Rhodes
received a text from the person he believed to be Pilato
regarding "killer tina." (SUF ¶ 26.)

Rhodes began writing up a search warrant application
for the address provided via text around January 21,
2011.  (SUF ¶ 24.)  In Rhodes' affidavit to the
application, he states that based on the facts described

he believes "Tristen Marie Pilato is furnishing narcotics
for the purpose of sexual pleasure from her residence . .
. ." (Exh. D at 234; Exh. C at 70.)  Rhodes believes
Sergeant Stolte reviewed the warrant application, and
then Rhodes brought it to a judge. (Exh. C at 77-78.)  A
Judge for the Riverside County Superior Court found
probable cause for the issuance of the search warrant and
signed and issued the warrant on February 3, 2011. (SUF
¶ 27; Exh. D at 228.)

Stolte is a sergeant in charge of the Special
Enforcement Team. (Exh. G at 12.)  He is responsible for
day-to-day management of the team. (Id.)  The team keeps
him abreast of what they are working on, but he only knew
"bits and pieces" of Rhodes' investigation of Tristen
Pilato. (SUF ¶ 30; Exh. G at 13-14.)  Rhodes'
investigation did not require Stolte's personal attention
or supervision, and it was not required that he be
notified of Lopez' involvement. (SUF ¶ 29; Exh. G at
15.)  Hamilton was not actively involved in Rhodes'
investigation that led to the search warrant for the
premises associated with Plaintiffs. (SUF ¶ 32; Hamilton
Decl., ¶ 3.)

After the search warrant was signed, Rhodes put
together a team to execute the warrant. (Exh. C at 76.)
Everyone on the SET team was present at the execution of
the warrant, including Rhodes, Hamilton, and Stolte.

14

1  (SUF ¶ 33; Exh. C at 77.)  Stolte commanded the team.

2  (SUF ¶ 34.)

3      The team found both Pilato and Thomas at the

4  residence.  (Exh. C at 77-78.)  During the search of the

5  house, the team found a pipe for smoking methamphetamine,

6  the illegal drug ecstasy, potted marijuana plants, and a

7  loaded handgun.  (SUF ¶ 35.)  Plaintiff Thomas was not

8  legally permitted to possess a firearm, and Plaintiff

9  Pilato was aware of this fact.  (SUF ¶ 35, Exh. A at 5;

10  Exh. B at 5.)  Pilato appeared to Rhodes to be under the

11  influence of a controlled substance while she was

12  arrested.  (Exh. C at 87.)  She was fidgety, could not

13  sit still, her speech was a little rapid, and her breath

14  was rancid.  (Id.)  Thomas did not exhibit symptoms of

15  intoxication.  (Id.)

16      After the search was complete, Pilato and Thomas were

17  arrested and booked into the county jail.  (Exh. C at

18  88.)  Pilato and Thomas provided blood or urine samples

19  for testing.  (SUF ¶ 36.)  Pilato's sample came back

20  positive for methamphetamine.  (SUF ¶ 36; Exh. F.)

21

22

23

24

25

26

27

28

**IV. DISCUSSION**

Defendants' asserted facts and supporting evidence are sufficient for the Court, lacking the benefit of any evidence or argument submitted by Plaintiffs, to find there is no triable issue of material fact as to any of Plaintiffs' claims. The Court considers below whether the undisputed facts entitle Defendants to judgment as a matter of law on each of Plaintiffs' claims.

**A.   Fabrication of False Evidence**

In their first claim, Plaintiffs allege that Defendants violated their constitutional rights under the Fifth and Fourteenth Amendments to be free from criminal charges on the basis of deliberately fabricated evidence by the government. As explained in Devereaux v. Abby, Plaintiffs must establish at least one of the following: "(1) Defendants continued their investigation of [them] despite the fact that they knew or should have know that [they were] innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." 263 F.3d 1070, 1076 (9th Cir.2001). Plaintiffs proceed on the first theory, arguing that Defendants knew Plaintiffs were not drug distributers or manufacturers, nevertheless, they colluded to develop and use evidence

1  they knew was false to establish probable cause to

2  effectuate the search warrant.  (Compl. at 8.)

3      The undisputed facts demonstrate that Plaintiffs were

4  not innocent.  Plaintiffs did, in fact, possess illegal

5  drugs, drug paraphernalia, and a prohibited handgun.

6  Plaintiffs admit these illegal items were found in their

7  home.

8      Even assuming Plaintiffs were innocent, the

9  undisputed facts do not reveal any evidence that

10  Defendants continued their investigation despite

11  reasonable facts demonstrating Plaintiffs' innocence.

12  Defendants had sufficient facts to support a judicial

13  finding of probable cause that Plaintiffs' residence

14  contained evidence of a felony.  Up to and including the

15  execution of the search warrant, Defendants had

16  substantial evidence tending to show that Plaintiffs were

17  not innocent.  Defendants corresponded via email and text

18  with a person whose name, description, phone number, and

19  physical address matched Pilato's.  These communications

20  included multiple coded references to Plaintiffs' illegal

21  drug use and possession of illegal drugs in Plaintiffs'

22  residence.  Given this evidence, reasonable officers in

23  Defendants' position would not have believed Plaintiffs

24  were innocent.

25      In their complaint, Plaintiffs allege Kelly C., a

26  confidential informant, reported to Defendants that she

27  did not see any controlled substances in Plaintiffs'

28

17

home.  By extension, Plaintiffs argue that despite Kelly C.'s evidence of Plaintiffs' innocence, Defendants continued to pursue a search warrant of Plaintiffs' home. First, "the district court is not required (or even allowed) to assume that the challenged factual allegations in the plaintiff's complaint are true." Butler v. San Diego Dist. Attorney's Office, 370 F.3d 956, 963 (9th Cir. 2004).  Even if Plaintiffs' allegations were true, Defendants possessed sufficient alternative evidence of Plaintiffs' illegal activity, detailed above, to reasonably believe that Plaintiffs were not innocent and to continue their investigation.

The Court concludes that Plaintiffs have failed to point to any evidence that Defendants continued their investigation although they knew or should have known that Plaintiffs were innocent.  Devereaux, 263 F.2d at 1076.  Thus, the Court finds that there is no genuine issue of material fact with respect to Plaintiffs' fabrication of evidence claim, and Defendants are entitled to summary judgment on the First Claim.

**B.   Unreasonable Search**

Plaintiffs Second Claim is that the search of Plaintiffs' home was unconstitutional because the warrant was obtained by judicial deception.  Specifically, Plaintiffs allege that Defendants' inclusion in the warrant application of Kelly C.'s observations of controlled substances at Plaintiffs' residence was an

1  instance of misrepresentation material to the finding of
2  probable cause.  (Compl. at 9.)

3       The Fourth Amendment protects individuals against
4  unreasonable searches and seizures.  U.S. Const. amend.
5  IV.  To comport with the Fourth Amendment, "[a] search
6  warrant . . . must be supported by an affidavit
7  establishing probable cause."  United States v. Mayer,
8  560 F.3d 948, 958 (9th Cir.2009) (internal citations
9  omitted).  In particular, the affidavit must establish a
10 fair probability that contraband will be found at the
11 particular place to be searched.  Bravo v. City of Santa
12 Maria, 665 F.3d 1076, 1083 (9th Cir.2011) (citing
13 Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76
14 L.Ed.2d 527 (1983)).  A search "conducted pursuant to an
15 ill-begotten or otherwise invalid warrant" may give rise
16 to a constitutional claim for damages.  Id.
17 at 910.

18      A claim based on an invalid search warrant may be
19 based on a claim of judicial deception; that is, the
20 defendant misled the judge when applying for the warrant,
21 and had the judge considered all of the facts, she would
22 not have found probable cause.  Chism v. Wash. State, 661
23 F.3d 380, 386 (9th Cir.2011).  For such a judicial
24 deception claim to survive summary judgment, a plaintiff
25 must show that (1) a supporting affidavit "contained
26 reckless or deliberate false statements and omissions"
27 and (2) "the affidavit, once corrected and supplemented,
28

1  would not have provided a magistrate judge with a

2  substantial basis for finding probable cause."  Id. at

3  388-89 (internal citations omitted).

4      The facts in the affidavit establish probable cause

5  to search Plaintiffs' residence.  As described above,

6  Defendants connected numerous Craigslist ads using code

7  words for illegal drugs with Pilato's email address,

8  physical description, phone number, and home address.

9  Further, Defendants engaged in a series of texts and

10  emails discussing possession and use of ecstacy and

11  methamphetamine with someone purporting to be Pilato.

12  These communications reasonably confirmed Defendants'

13  belief that illegal drugs would be found at Pilato's

14  address.  Thus, a reasonably prudent person with the same

15  knowledge as Defendants could believe that drugs would be

16  found at Plaintiffs' residence.  Defendants' affidavit

17  established probable cause sufficient to issue a search

18  warrant.

19      Moreover, there is no evidence that Defendants'

20  supporting affidavit included any false statements or

21  omissions.  Plaintiffs' allege that by including false

22  statements by Kelly C. in the warrant application,

23  Defendants deliberately misled the judge.  However, the

24  warrant application does not include any mention of or

25  statements by Kelly C. or any other confidential

26  informant.  In addition, there is no evidence in the

27  record that Defendants omitted facts "required to prevent

28

technically true statements in the affidavit from being misleading." <u>Bravo v. City of Santa Maria</u>, 665 F.3d 1076, 1083 (9th Cir. 2011) (citing <u>United States v. Stanert</u>, 762 F.2d 775, 781, as amended, 769 F.2d 1410 (9th Cir.1985)).

Defendants had probable cause to search Plaintiffs' residence. Plaintiffs have not pointed to evidence in the record that creates a genuine issue of material fact regarding deliberate or reckless false statements in the warrant affidavit adequate to defeat summary judgment. Therefore, Defendants are entitled to summary judgment on their Second Claim for unreasonable search.

## C.   Unreasonable Seizure

Plaintiffs' Third Claim is for false arrest or unreasonable detention. Plaintiffs allege that a reasonably prudent officer would have known that Plaintiffs were not subject to arrest or detention because there was no probable cause to believe they had committed a crime. (Compl. at 10.)

There are no undisputed facts that demonstrate Plaintiffs were detained prior to their arrest. It is conceivable from the facts that Plaintiffs were detained during Defendants' execution of the search warrant. This detention is clearly reasonable under <u>Michigan v. Summers</u>. 452 U.S. 692, 705 (holding that officers executing a search warrant for contraband have the

21

1   authority "to detain the occupants of the premises while
2   a proper search is conducted").

3       The Fourth Amendment requires that an arrest be
4   supported by probable cause. Atwater v. City of Lago
5   Vista, 532 U.S. 318, 354 (2001); Michigan v. Summers, 452
6   U.S. 692, 700 (1981). An arrest is supported by probable
7   cause if, under the totality of the circumstances known
8   to the arresting officer, a prudent person would have
9   concluded that there was a fair probability that the
10  defendant had committed a crime. Luchtel v. Hagemann,
11  623 F.3d 975, 980 (9th Cir.2010); Beier v. City of
12  Lewiston, 354 F.3d 1058, 1065 (9th Cir.2004).

13      Probable cause to arrest is an absolute defense to
14  any claim under § 1983 against police officers for
15  wrongful arrest or false imprisonment. Mustafa v. City
16  of Chicago, 442 F.3d 544, 547 (7th Cir.2006); see also
17  Cabrera v. City of Huntington Park, 159 F.3d 374, 380
18  (9th Cir.1998) ("To prevail on his section 1983 claim for
19  false arrest ... [the plaintiff] would have to
20  demonstrate that there was no probable cause to arrest
21  him.").

22      The Court finds that Defendants had probable cause to
23  arrest Plaintiffs. A valid search warrant existed
24  allowing Defendants to enter Plaintiffs' home. Although
25  the search warrant did not authorize Plaintiffs' arrest,
26  incriminating evidence was found by Defendants during the
27  search. Defendants found a pipe for smoking
28

methamphetamine, the illegal drug ecstasy, and potted
marijuana plants.  That incriminating evidence provided
Defendants the necessary probable cause to arrest
Plaintiffs.  See United States v. Brobst, 558 F.3d 982,
997 (9th Cir. 2009) ("[O]nce incriminating evidence is
discovered by officers serving a valid search warrant,
that evidence can provide probable cause for a
warrantless arrest.") (citing United States v. Moreno,
891 F.2d 247 (9th Cir.1989)).

Since Defendants had probable cause to arrest
Plaintiffs, Defendants are entitled to summary judgment
on Plaintiffs' false arrest claim.  Defendants' motion
for summary judgment on Plaintiffs' Third Claim for
unreasonable seizure is granted.

**D.  Qualified Immunity**

The defense of qualified immunity protects
"government officials ... from liability for civil
damages insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known."  Harlow v.
Fitzgerald, 457 U.S. 800, 818 (1982).  In Saucier v.
Katz, 533 U.S. 194 (2001), the Supreme Court set forth a
two-pronged test to determine whether qualified immunity
exists.  The threshold question is: "Taken in the light
most favorable to the party asserting the injury, do the

facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. If no constitutional right was violated if the facts were as alleged, the inquiry ends and defendants prevail. See id. If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established . . . . 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201-02 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The Supreme Court recently emphasized the high burden that must be met for a plaintiff to overcome qualified immunity, replacing Anderson's language of "a reasonable offic[er]" with "every reasonable offic[er]" and stating that "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011) (emphasis added).

Although Saucier required courts to address the questions in the particular sequence set out above, courts now have the discretion to decide which prong to address first, in light of the particular circumstances

of each case. See Pearson v. Callahan, 555 U.S. 223
(2009).

As shown in the three preceding sections, the
undisputed evidence in the record does not establish any
violations of Plaintiffs' Fourth, Fifth or Fourteenth
Amendment rights.  Defendants prevail on the first step
of the Saucier analysis, so the Court need not proceed to
the second step of the Saucier analysis.  Defendants are
entitled to judgment as a matter of law on the qualified
immunity defense.

## VI. CONCLUSION

For the foregoing reasons, the Court GRANTS summary
judgment in favor of Defendants on all three of
Plaintiffs' claims.

Dated:  February 11, 2013       _____

                                    JESUS G. BERNAL
                                United States District Judge